UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

HEDWIG TRAZI :
:
v. : C.A. No. 10-148S
:
MICHAEL J. ASTRUE :
Commissioner of the Social Security :
Administration :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on March 26, 2010 seeking to reverse the decision of the Commissioner. On October 29, 2010, Plaintiff filed a Motion to Reverse Without or, Alternatively, With a Remand for a Rehearing the Commissioner's Final Decision. (Document No. 7). On December 29, 2010, the Commissioner filed a Motion for Order Affirming the Decision of the Commissioner. (Document No. 9).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions and independent legal research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that the Commissioner's Motion for Order Affirming the Decision of the Commissioner (Document No. 9) be GRANTED and that Plaintiff's Motion to

Reverse Without or, Alternatively, With a Remand for a Rehearing the Commissioner's Final Decision be DENIED. (Document No. 7).

## I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB on March 19, 2007 alleging disability since January 1, 2002. (Tr. 108-110). Plaintiff later amended her disability onset date to August 1, 2006. (Tr. 26). The application was denied initially on October 18, 2007 (Tr. 66-69) and on review on September 10, 2008. (Tr. 58-65). On September 26, 2008, Plaintiff requested an administrative hearing. (Tr. 76). On September 30, 2009, Administrative Law Judge Randy Riley (the "ALJ") held a hearing at which Plaintiff, represented by counsel and a vocational expert ("VE") appeared and testified. (Tr. 22-56). The ALJ issued a decision unfavorable to Plaintiff on October 21, 2009. (Tr. 4-21). The Appeals Council did not complete its review of the claim during the time allowed, therefore the ALJ's decision became final. (Tr. 1-3). A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred by giving "limited weight" to the opinions of her treating hematologist and psychiatrist and did not have support for his finding that Plaintiff frequently cared for her grandchildren.

The Commissioner disputes Plaintiff's claims and argues that the ALJ properly discounted the opinions of the treating hematologist and psychiatrist and that there is support in the record for the ALJ's finding that Plaintiff frequently cared for her grandchildren.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – <u>i.e.</u>, the evidence must do more

than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the

law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id.

The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV. THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A. Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B. Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D. The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth,

if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E. Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42

U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

>  (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
>  (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
>  (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
>  (4) Treatment, other than medication, for relief of pain;
>
>  (5) Functional restrictions; and
>
>  (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

### V. APPLICATION AND ANALYSIS

Plaintiff was sixty-two years old on the date of the ALJ's decision. (Tr. 26). Plaintiff completed the ninth grade and subsequently participated in a three-year apprenticeship in textile sales. (Tr. 28, 133). Plaintiff has past relevant work as a direct care provider in a group home, a housekeeper and a secretary. (Tr. 19, 124). Plaintiff's date last insured for DIB is December 31, 2011. (Tr. 113). Plaintiff alleges disability due to breast cancer, brain stem stroke, a hole in her heart and Thalysemia trate depression. (Tr. 123).

Dr. Joseph Callaghan, a state agency physician who reviewed Plaintiff's medical records in June 2007, concluded that her impairments did not preclude work at the medium level, so long as she never had to climb ladders or scaffolds and only occasionally had to crawl; she needed to avoid unprotected heights completely and exposure to hazardous equipment should be limited. (Tr. 436-439).

Dr. Clifford Gordon, a state agency psychologist who reviewed records as to Plaintiff's mental condition in October 2007, concluded that she should be able to do simple work without

-11-

limitation but would have moderate difficulties with more detailed work, she should be able to maintain concentration for two-hour blocks of time on tasks involving three to four steps, she could relate adequately to coworkers and supervisors but not with the public; and she had no significant adaptive limitations. (Tr. 561-563).

A note by Dr. Jules Friedman in July 2006 indicated that Plaintiff's bouts of dizziness were something that occurred about once a year. (Tr. 217). Testing at that time found no abnormalities, and Dr. Friedman characterized her condition as benign. (Tr. 218). Around that time, she described her current hobbies as including knitting, crocheting, painting and woodwork finishing. (Tr. 241).

In January 2007, she reported no problems with dizziness or fatigue but some unsteadiness and depression. (Tr. 387). She likewise reported no dizziness, malaise or general weakness when seen in May 2007 but did report fatigue. (Tr. 756). Plaintiff had an episode of pericarditis while vacationing in July 2007. (Tr. 515, 649). In August 2007, Plaintiff reported chronic fatigue and fevers to Dr. James Crowley while being treated for a urinary tract infection. (Tr. 512). In December 2007, she had a bout of dizziness which was diagnosed as an atypical variant migraine. (Tr. 622).

When seen by Dr. Crowley in February 2008, Plaintiff's chief complaint was fatigue. (Tr. 663). In May 2008, Dr. John Conte noted that Plaintiff displayed no current signs of pericarditis; she did have severe osteoporosis on active prednisone treatment. (Tr. 650-651). In September 2008, Plaintiff complained of frequent falls and chronic fatigue to Dr. Crowley. (Tr. 660).

In October 2008, Plaintiff told Dr. Alberto Savoretti that she had fallen while getting a grandchild out of the back seat of her car and scraped her nose. (Tr. 776). She reported she had no problems with dizziness or palpitations. Id. She said depression control had been variable, but that

she was coping reasonably well.  Id.  Findings on mental status examination were normal.  Id. Neurological findings were normal, her gait was "antalgic but mostly intact."  Id.

In January 2009, Dr. Friedman noted that Plaintiff exhibited increased balance problems, but showed no signs of dizziness and a recent brain MRI was viewed as normal.  (Tr. 699-700).  That same month, she told Dr. Conte that she was chronically fatigued but accomplished her activities of daily living "easily" and was able to do everything she needs to do.  (Tr. 737). Dr. Conte described her as "doing well."  Id.

In February 2009, Plaintiff underwent a neuropsychological evaluation.  (Tr. 701).  At that time, she reported she was currently "very active" in the lives of her three grandchildren and "regularly provides child care to them."  (Tr. 703).  Testing showed mild attention deficits, difficulties with executive functioning including focusing on complex tasks, memory functioning was variable, but she could form new memories.  (Tr. 707).  Also, it was determined that forgetfulness was more likely related to inattentiveness due to executive functioning deficits than actual memory loss.  Id.  Although some impairments in attention, memory and executive functioning were identified, there was no decline in her abilities to carry out the activities of daily living; depression associated with life stresses, such as her sudden divorce and her breast cancer, was viewed as the most likely cause of her current complaints.  (Tr. 708).

**A.     The ALJ's Decision**

The ALJ determined that Plaintiff's depression, residuals of a stroke, residuals of breast cancer, thalassemia (a blood disorder resulting in anemia) and osteoporosis were "severe" impairments within the meaning of 20 C.F.R. § 404.1520(c).  (Tr. 9).  After considering the entirety of the record, the ALJ found that Plaintiff had the RFC to perform medium work limited by the need

to avoid concentrated exposure to moving machines and unprotected heights, and to work consisting of 3-4 step tasks in two-hour blocks of time with no interaction with the public. (Tr. 11). Based on this RFC and testimony from the VE, the ALJ concluded at Step 5 that Plaintiff was capable of making a successful adjustment to other medium, unskilled jobs existing in significant numbers in the economy. (Tr. 20).

### B. The ALJ's Finding as to Plaintiff's Childcare Activities is Supported by Substantial Evidence

The ALJ found, for several articulated reasons, that Plaintiff's allegations as to total disability were "not entirety credible as the record reflects some limitations; however, not the dramatic level of dysfunction that she testified to at the hearing as records reflect improvement with treatment and her reported activities demonstrate a greater level of functioning than alleged." (Tr. 19). In part, the ALJ explained that Plaintiff's "purported cognitive dysfunction, fatigue with a need to lie down most of the day, and imbalance are not entirely credible as she reported that she provided frequent childcare for her grandchildren and it is not considered likely she would be allowed to care for her grandchildren with the degree of dysfunction alleged." Id.

Plaintiff challenges this finding for two reasons. Plaintiff contends that the ALJ did not cite to the record for this finding and also that she was not asked about such childcare at the ALJ hearing. (Document No. 7 at p. 9). Thus, she contends that the ALJ's finding as to childcare is not supported by the record. Id.

Plaintiff's argument is contradicted by the record. In February 2009, Plaintiff reported during a neuropsychological evaluation that she was currently "very active in the lives of her three grandchildren and regularly provides childcare to them" and "baby-sits her grandson every Monday." (Tr. 702-703). Also, in October 2008, Plaintiff sought treatment after "she tripped"

-14-

getting her grandson out of the backseat of her two-door car. (Tr. 776). Accordingly, there is sufficient evidence in the record to support the ALJ's finding that Plaintiff provided "frequent childcare for her grandchildren" and his conclusion that such activity was inconsistent with Plaintiff's assertions as to her level of functionality. Plaintiff testified that she lived in the same house as her son and daughter-in-law and thus it was reasonable for the ALJ to conclude that Plaintiff would not be given responsibility for the care and safety of grandchildren if she was unable to function to the degree she alleged.

While reasonable minds could differ as to the interpretation of this evidence, the issue is not whether this Court would have reached the same conclusion as did the ALJ. "The ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also." Benetti v. Barnhart, 193 Fed. Appx. 6, 2006 WL 2555972 (1st Cir. Sept. 6, 2006) (per curiam) (citing Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1 (1st Cir. 1987)). Rather, the narrow issue presented is whether the ALJ's finding has adequate support in the record. Since it does, there is no basis upon which to reject such finding in this case. The ALJ thoroughly weighed the evidence in the context of the record as a whole and adequately explained his reasoning. Plaintiff has simply not shown the existence of reversible error on this credibility finding.

### C. Plaintiff Has Shown No Error in the ALJ's Evaluation of Treating Source Opinions

Plaintiff alleges that the ALJ erred by giving only "limited weight" to the opinion of Dr. Charles Denby, her treating psychiatrist. (Tr. 18). Shortly before the September 30, 2009 ALJ hearing, Dr. Denby completed an emotional impairment questionnaire at the request of Plaintiff's counsel and opined that Plaintiff's depression and cognitive disorder rendered her "grossly

impaired" and unable to work. (Tr. 877-878). However, the ALJ gave this opinion only "limited weight" because it was not consistent with treatment notes or Plaintiff's reported level of activity. (Tr. 18). In addition, the ALJ indicated that the treatment records document progressive improvement since the summer of 2006 when Plaintiff's husband unexpectedly left her and she was diagnosed with breast cancer shortly thereafter. Id. For instance, a September 10, 2009 note indicates that Plaintiff was "looking forward to her European cruise," (Tr. 855), and a June 4, 2009 note indicates that Plaintiff reported that "the Ritalin really helps me. I can concentrate better. I'm so glad." (Tr. 860). In addition, a December 15, 2008 note reported that her mood was "stabilizing" and she was looking forward to a holiday family cruise in January 2009. (Tr. 847, 868). She also reported taking a road trip to Canada in April 2009 with a friend. (Tr. 863).

In addition to giving limited weight to Dr. Denby's opinion, the ALJ found Dr. Gordon's reviewing opinion (Exs. 27F and 28F) to be "reasonable." (Tr. 17). Dr. Gordon, a Psychologist, opined that Plaintiff was able to perform "basic tasks with 3-4 consistent steps" in "two hour blocks of time" and to "relate adequately with coworkers, supervisors, but not with the public." (Tr. 563). The ALJ's RFC assessment as to non-exertional limitations is based upon Dr. Gordon's opinion and thus is supported by the record. See Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (The ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors.").

Finally, Plaintiff contends that the ALJ erred by giving only "limited weight" to the opinion of Dr. James Crowley, her treating hematologist. (Tr. 18-19). Plaintiff testified that she had been

impaired" and unable to work. (Tr. 877-878). However, the ALJ gave this opinion only "limited weight" because it was not consistent with treatment notes or Plaintiff's reported level of activity. (Tr. 18). In addition, the ALJ indicated that the treatment records document progressive improvement since the summer of 2006 when Plaintiff's husband unexpectedly left her and she was diagnosed with breast cancer shortly thereafter. Id. For instance, a September 10, 2009 note indicates that Plaintiff was "looking forward to her European cruise," (Tr. 855), and a June 4, 2009 note indicates that Plaintiff reported that "the Ritalin really helps me. I can concentrate better. I'm so glad." (Tr. 860). In addition, a December 15, 2008 note reported that her mood was "stabilizing" and she was looking forward to a holiday family cruise in January 2009. (Tr. 847, 868). She also reported taking a road trip to Canada in April 2009 with a friend. (Tr. 863).

In addition to giving limited weight to Dr. Denby's opinion, the ALJ found Dr. Gordon's reviewing opinion (Exs. 27F and 28F) to be "reasonable." (Tr. 17). Dr. Gordon, a Psychologist, opined that Plaintiff was able to perform "basic tasks with 3-4 consistent steps" in "two hour blocks of time" and to "relate adequately with coworkers, supervisors, but not with the public." (Tr. 563). The ALJ's RFC assessment as to non-exertional limitations is based upon Dr. Gordon's opinion and thus is supported by the record. See Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (The ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors.").

Finally, Plaintiff contends that the ALJ erred by giving only "limited weight" to the opinion of Dr. James Crowley, her treating hematologist. (Tr. 18-19). Plaintiff testified that she had been

treated by Dr. Crowley for thalassemia (a hereditary blood disorder causing anemia) for quite a number of years. (Tr. 47).

The ALJ noted Dr. Crowley's opinion that Plaintiff was unable to work due to residuals of a brain stem stroke. (Tr. 18, 843-844). However, the ALJ gave his opinion only "limited weight" because "the record does not entirely document the symptoms that he noted on forms and [Plaintiff's] activities are inconsistent with his assessment." (Tr. 18-19).

On September 2, 2009, Dr. Crowley opined in a medical questionnaire that Plaintiff suffered from several severe symptoms including dizziness, poor balance, headaches and poor memory, and could only sit for one hour in an occupational setting, could not stand or walk at all in such setting, could never lift or carry more than ten ponds, and never use her arms/hands to push and pull or do any over-shoulder work. (Tr. 843-845). However, the ALJ accurately notes that the record contradicts this substantial level of impairment. For instance, in 2009, Plaintiff went on two cruises and on a "road trip" to Canada. She also reported in 2009 that she "regularly" provided childcare for her grandchildren and, in 2008, tripped while getting her grandson out of the back seat of a two-door car. Furthermore, in January 2009, she reported fatigue to Dr. Conte but indicated that she was able to accomplish activities of daily living "easily" and had "no remarkable myalgias." (Tr. 737). Since the ALJ's findings are supported by the record, they are entitled to deference. Plaintiff has shown no error in the ALJ's determination to give only limited weight to Dr. Crowley's total disability opinion.

## VI.   CONCLUSION

For the reasons discussed herein, I recommend that the Commissioner's Motion for Order Affirming the Decision of the Commissioner (Document No. 9) be GRANTED and that Plaintiff's

Motion to Reverse Without or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision be DENIED. (Document No. 7).

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
February 7, 2011